UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

BRIAN M. SCHULTZ
122 Georgiana Circle
Madison, WI 53716

    Plaintiff,

v.

MIDWEST PATROL & INVESTIGATIVE, LLC
2418 Crossroads Dr.
#1200
Madison, WI 53718

    Defendant.

CASE NO. 11-cv-105

**JURY TRIAL DEMANDED
UNDER FED. R. CIV. P. 38 (b)**

---

## COMPLAINT

---

For his complaint against defendant, plaintiff states as follows:

### Jurisdiction

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. Section 2000e(5). Equitable and other relief are also sought under 42 U.S.C. 2000e(5)(g). Jurisdiction is also based on 28 U.S.C. Sections 1331, 1334 and 42 U.S.C. Sections 1981 et seq.

### Parties

1. Plaintiff Brian M. Schultz resides at 122 Georgiana Circle, Madison, WI 53716. At all times relevant he worked as an employee of defendant Midwest Patrol & Investigative, LLC (hereinafter "MPI"), where he sought ongoing employment by defendant.

1

2. Defendant MPI is a Wisconsin limited liability company located at 2418 Crossroads Dr. #1200, Madison, WI 53718, and is in the business of providing security patrol and investigative services. Its registered agent in Wisconsin is Shawn Brian David Smith, 2418 Crossroads Dr. #1200, Madison, WI 53718.

### Nature of Case

1. The discriminatory acts based upon plaintiff's disability occurred during the period from August 12, 2008, when plaintiff was hired by defendant, until November 12, 2008, when his employment was terminated by defendant.

2. Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") regarding the defendant's discriminatory conduct on October 18, 2005.

3. The Equal Employment Opportunity Commission sent the attached "Notice of Right to Sue" dated November 15, 2010, which plaintiff received on or about November 17, 2010.

4. The discriminatory acts based upon plaintiff's disability that are the basis for this suit are (i) the defendant's failure to reasonably accommodate the plaintiff for his injuries, even though the plaintiff is now and was at all relevant times a "qualified individual with a disability" under 42 U.S.C. 12111(8); (ii) the defendant's failure to engage in an "interactive process" to determine how the plaintiff's disability could have been accommodated; and (iii) the defendant's termination of plaintiff's employment on November 12, 2008 for actions of the plaintiff that were a direct result of the defendant's failure to reasonably accommodate him.

### Cause of Action

1. Plaintiff is a combat veteran of the United States Marine Corps. While serving his second deployment in Iraq, he was seriously injured when a roadside improvised

2

explosive device detonated, destroying his vehicle. He was honorably discharged with a Purple Heart, among other medals and awards.

2. After the plaintiff's return from combat in Iraq, the U.S. Department of Veterans Affairs determined, effective June 24, 2007, that the plaintiff was 70% disabled, with "Degenerative joint disease, lumbar spine" a 40% disability, "General anxiety disorder, to include residuals of mild traumatic brain injury" a 30% disability, "Radiculopathy, left lower extremity (claimed as sciatic nerve)" a 10% disability and "Bicipital tendonitis, right shoulder" a 10% disability.

3. The plaintiff was hired by defendant on August 7, 2008. Before his hiring, the plaintiff informed Mr. Scott Taube, the employee of defendant who interviewed him, of his disability, provided him with a copy of the Department of Veterans Affairs disability determination, and asked for their reasonable accommodation. The plaintiff requested accommodation such that he should work only the first shift, not be assigned overtime or double shifts, and not be required to sit or walk for two hours at a time. During the plaintiff's first week of employment with defendant, defendant accommodated his disability by scheduling him only for the first shift, capping his hours at his desired level, and not requiring that he sit or walk for more than two consecutive hours.

4. On August 7, 2008, the plaintiff completed an application for group insurance to the Pekin Life Insurance Company. On the application, the plaintiff stated that he had "mild anxiety disorder" and "low back pain," and that his doctors prescribed him Paxil and Wellbutrin for his anxiety disorder and Methadone for his pain. Ms. Laura Taube, an employee of the defendant, signed this application as a witness.

5. After his first week of employment, the plaintiff was consistently scheduled by defendant to work the second and third shifts, often being required to work a double shift. These shifts required extended periods of walking or sitting, well over the two hours which the plaintiff's disability limited him to.

6. The plaintiff repeatedly informed his supervisors, including Mr. Taube that he needed to be accommodated by being required to work only first shifts, and not the second and third shifts he was being assigned, as well as the overtime or double shifts that were being required of him.

7. These supervisors responded to the plaintiff's request by telling him that he was "insubordinate" or something to that effect, that he should not make excuses, that he should "deal with it" or something to that effect, that he had a "poor attitude" or something to that effect, that he was "faking" his pain and/or anxiety, or something to that effect, and that in order to be assigned to first shift work he had to accrue seniority with the company.

8. On October 25, 2008, the plaintiff again provided to his supervisor a copy of the Department of Veterans Affairs disability determination and asked to be accommodated according to the requirements of the Americans with Disabilities Act. Though he submitted proof of his disability along with his request, the plaintiff's request was met with skepticism and cynicism, as he was told he was being "watched with an eagle eye" or something to that effect.

9. Defendant never made an attempt to engage with the plaintiff in an interactive process to determine how it could have accommodated his disability in regards to his inability to work the second or third shift.

10. Defendant never made an attempt to engage with the plaintiff in an interactive process to determine how it could have accommodated his disability in regards to his inability to work overtime or double shifts.

11. Defendant never made an attempt to engage with the plaintiff in an interactive process to determine how it could have accommodated his disability in regards to his inability to sit or walk for more than two hours at a time.

12. Defendant's failure to reasonably accommodate the plaintiff was the direct and proximate cause of every instance, except one, of "unsatisfactory performance" cited against the plaintiff.

13. On November 7, 2008 defendant extended the plaintiff's probationary period for an additional 90 days. This action is not contemplated in defendant's "Employment Policy Manual."

14. Defendant terminated the plaintiff's employment on November 12, 2008, citing his "Officer Contact (counseling) Reports" and one "Warning."

### Injury

As a direct and proximate result of the defendant's conduct, plaintiff has been unemployed since his termination and unable to find work.

### Request for Relief

As relief from the age discrimination by defendant, plaintiff prays that this Court grant the following relief:

1. Awarding to plaintiff: past wages and benefits of a security officer employed by defendant, for the period from November 12, 2008 through the date that judgment is entered in this case;

2. Directing that the defendant employ plaintiff as a security officer from and after the date that judgment is entered in this case; or, in the alternative, awarding to plaintiff damages equal to the present value of the future wages and benefits that he would have received from the date that judgment is entered in this case, calculated as if plaintiff were employed by defendant as a security officer, and enhanced by the present value of future wages and benefits that plaintiff would have received with wage increases and promotions as would occur in the normal course of employment.

3. Awarding to plaintiff the attorney fees and costs involved in litigating this case; and

4. Such other and further relief as this court deems appropriate in the circumstances.

Dated at Madison, Wisconsin, this 11th day of February, 2011.

_____
Michael P. Erhard
State Bar No. 1015393
Attorney for Plaintiff

Of Counsel:

Erhard & Payette, LLC
High Point Plaza
7617 Mineral Point Rd.
Suite 200
Madison, WI 53717
P: (608) 836-4555
F: (608) 237-6323
E: merhard@erhardpayette.com